UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,


      -v-                                   5:06-CR-226

MARK RAMSEY, also known as Dread,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

HON. GLENN T. SUDDABY          LISA MARIE FLETCHER, ESQ.
United States Attorney               GRANT C. JAQUITH, ESQ.
    Northern District of New York     Assistant U.S. Attorneys
Attorney for Plaintiff
P. O. Box 7198
100 South Clinton Street
Syracuse, New York  13261-7198

JAMES H. MEDCRAF, ESQ.
Attorney for Defendant
614 James Street, Suite 100
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Defendant Mark Ramsey ("defendant" or "Ramsey") filed a motion for an order

directing the government[1] to move for a downward departure pursuant to 18 U.S.C.

---

[1] For ease of reference the United State Attorney's office is referenced as the government throughout this Memorandum-Decision and Order.

§ 3553(e).  The government opposed.  Oral argument was heard on July 10, 2007, in Utica, New York.  Decision was reserved.

## II.  BACKGROUND

Ramsey was charged by an Information filed on June 22, 2006, with conspiracy to possess with intent to distribute and to distribute cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 841(a)(1), 846.  The Information alleged the amount of crack involved was 50 or more grams, thus subjecting defendant to the mandatory minimum penalty provisions of 21 U.S.C. § 841(b)(1)(A).  Approximately thirty-three co-defendants were charged with related crimes in this and related cases.

Ramsey and the government entered into separate Plea and Cooperation Agreements.  Pursuant to the Plea Agreement, Ramsey agreed to plead guilty to the one-count Information.  He also acknowledged his understanding of the penalties to which he was subject:  (1) a maximum term of life imprisonment; (2) a mandatory minimum of ten years of imprisonment; (3) a minimum of five years of supervised release, up to a maximum of life, as well as other penalties should he violate the terms of his supervised release; (4) a maximum fine of $4,000,000; (5) forfeiture of $2,820 in United States Currency; (5) a special assessment of $100 due at the time of sentencing; (6) interest and penalties that accrue by operation of law upon unpaid financial obligations imposed as part of his sentence; and (7) collateral consequences of a felony conviction such as the loss of the right to vote and the right to possess firearms.  See  21 U.S.C. § 841(b)(1)(A) (setting forth penalties including imprisonment, mandatory minimum term of imprisonment, supervised release, and maximum

fine); id. § 853 (setting forth forfeiture provisions); 18 U.S.C. § 3013 (special assessment).

The Plea Agreement further provided that the defendant:

> understands that the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines . . . as modified by United States v. Booker, 534 U.S. 220 (2005).  In imposing the sentence, the Court must take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).  While the Court is not ultimately bound to impose a sentence within the applicable Sentencing Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors.

(Docket No. 229 ¶ 4.)  Ramsey further agreed that, based upon his admitted conduct which was provable by the government, he is accountable for more than 500, but less than 1,500, grams of crack cocaine under U.S.S.G. § 2D1.1.

The government agreed that it would recommend an "acceptance of responsibility" two-level downward adjustment to the applicable Sentencing Guidelines range, pursuant to U.S.S.G. § 3E1.1(a).  Also, the government agreed to move for an additional downward adjustment of one level in recognition of the efficiencies generated by Ramsey's prompt guilty plea, so long as he otherwise qualified for such adjustment under U.S.S.G. § 3E1.1(b).  The plea agreement noted that the Court would not be bound by its terms, or by any recommendations, stipulations, or requests made by the parties.

Ramsey and the government also entered into a Cooperation Agreement.  Defendant reiterated his agreement to plead guilty to Count 1 of the Information.  He also agreed to cooperate with the government with respect to all of the activities of himself and others about which the government may inquire, including truthfully testifying before the grand jury and at any trial or other proceedings.  In exchange for Ramsey's cooperation, the

government agreed that it would not bring any additional charges relating to his possession

with intent to distribute and distribution of crack cocaine, as described in Count 1 of the

Information.  The government agreed that "self-incriminating information provided by the

defendant pursuant to his cooperation . . . will not be used in determining the applicable

Sentencing Guidelines range, pursuant to U.S.S.G. § 1B1.8."  (Docket No. 245 Ex. ¶ 4(c).)

However, it reserved the right to recommend a specific sentence within the applicable range

determined by the Court and the right to advise the Court and the Probation Office of any

information subject only to the provisions of the Cooperation Agreement and U.S.S.G.

§ 1B1.8.

Pursuant to the Cooperation Agreement, the government retained sole discretion to

determine whether Ramsey provided substantial assistance in the investigation or

prosecution of others who committed criminal offenses.  Should it determine that the

defendant did provide substantial assistance, the government agreed to "recommend a

downward departure under either or both of 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1."  Id.

¶ 4(f).  However, the government did not promise to make such a motion.  The Cooperation

Agreement further provided that the government may consider any relevant facts known to it

at the time the agreement was executed in determining whether Ramsey "provided

'substantial assistance' warranting a motion for a downward departure under U.S.S.G.

§ 5K1.1 and/or 18 U.S.C. § 3553(e)."  Id. ¶ 4(g).  The government retained sole discretion to

determine the extent of its recommendation for a downward departure, should it determine

that such a motion would be made.  However, the Cooperation Agreement provided that "the

final decision as to how much, if any, reduction in sentence is warranted because of that

assistance, rests solely with the sentencing Court."  Id. ¶ 4(h)(i).  The Cooperation

Agreement additionally provided that "[t]he sentence to be imposed upon the defendant is within the sole discretion of the sentencing Court, subject to the statutory maximum penalties set forth in the Plea Agreement and the provisions of the Sentencing Reform Act and the United States Sentencing guidelines promulgated thereunder." Id. ¶ 7.

Further, if defendant were sentenced prior to completing his cooperation, the government could "decline to make a motion for a downward departure under § 5K1.1 and/or 18 U.S.C. § 3553(e) and defer its determination as to whether the defendant has provided 'substantial assistance' warranting a motion for a downward departure under Fed. R. Crim. P. 35(b) for up to one year." Id. ¶ 4(h)(ii).

The Cooperation Agreement also provided that should Ramsey breach the plea agreement, he would not be permitted to withdraw his guilty plea, and the government could void both the Plea and Cooperation Agreements. The government could then prosecute defendant for any federal criminal violation of which it had knowledge, notwithstanding any statute of limitations. The government would also be permitted to use any information, statement, or testimony of the defendant against him in any such prosecution. Further, should Ramsey breach the agreement, the government could oppose any downward adjustment, advocate any upward adjustment, use any information it possessed to determine the applicable guidelines range, decline to make or withdraw a motion for a downward departure under U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e) notwithstanding substantial assistance provided by defendant, and recommend a sentence within or above the applicable range determined by the Court.

After execution of the Plea and Cooperation Agreements, Ramsey entered a plea of guilty to Count 1 of the Information. His sentencing was adjourned multiple times so that

he could fulfill his commitments under the Cooperation Agreement.  As a result of his

cooperation, co-conspirators including Joanna Tomassi, Gennaro Corigliano, and Kenneth

Nunes ultimately changed their pleas to guilty.

Additionally, Ramsey testified for two days during the trial of co-conspirators

Jonathan Baker, George Fuller, and Kelvin Minott.  The defendant worked closely with the

government to finalize transcripts for numerous wire interceptions, describing his

interpretation of the meaning of the conversations, in preparation for his testimony at the trial.

He also related the extensive history he had with the co-conspirators, especially Kelvin

Minott.  The jury returned guilty verdicts as to Jonathan Baker, George Fuller, and Kelvin

Minott.  Judging from the jury's verdict, the jurors credited Ramsey's trial testimony.

According to the government, his cooperation "contributed significantly to our trial success."

(Docket No. 236 at 4.)  Ultimately each of these co-conspirators were sentenced principally

to 240 months imprisonment.

Based upon Ramsey's significant cooperation, the government moved for a

downward departure pursuant to U.S.S.G. § 5K1.1.  Id. at 3-4.  It requested a five-level

downward departure, finding that such a departure would be "fair, reasonable and

appropriate."  Id. at 4.  If the Court accepted the five-level downward departure

recommended by the government, defendant's applicable Sentencing Guidelines range

would be 121-151 months.  The government stated that it had no objection to a sentence at

the low end of the Sentencing Guidelines range, to wit:  121  months.  Id. at 5.  Because

defendant's applicable Sentencing Guidelines range of 121-151 months was more than the

120-month mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(A), the government

declined to make a motion for a downward departure under 18 U.S.C. § 3553(e).  Id. at 4 n.1.

As a result of the government's failure to file a motion for a downward departure pursuant to 18 U.S.C. § 3553(e), Ramsey is subject to the statutory mandatory minimum 120-month term of imprisonment.

Ramsey then filed the instant motion to compel the government to move for a downward departure pursuant to § 3553(e).  He contends that the refusal to make such a motion breached the Plea and Cooperation Agreements, tacit representation made by the government to induce his guilty plea, and a bad faith, unconstitutional exercise of discretion.

## III.  DISCUSSION

Without a motion by the government pursuant to 18 U.S.C. § 3553(e) "requesting or authorizing a departure below the statutory minimum," a district court "lack[s] the authority to sentence" a defendant to less than the statutory minimum.  Melendez v. U.S., 518 U.S. 120, 130, 116 S. Ct. 2057, 2063 (1996).  Moreover, the government may make a motion for a departure below the Sentencing Guidelines range (under U.S.S.G. § 5K1.1) without necessitating a motion to depart below the statutory minimum.  See id. at 126-27, 116 S. Ct. at 2061 (discussing separately motions seeking relief under § 3553(e) and § 5K1.1).

The government moved for a departure below the Sentencing Guidelines range pursuant to § 5K1.1.  However, it did not move for a departure below the statutory minimum pursuant to § 3553(e).  Accordingly, there is no authority to sentence defendant below the statutory minimum absent some other circumstance.

Ramsey argues that there was a breach of the Plea and Cooperation Agreements, the remedy for which could be requiring the government to move pursuant to § 3553(e). Should the government be compelled to so move, defendant could be sentenced without regard to the statutory mandatory minimum.

Plea or cooperation agreements are interpreted according to contract law principles. U.S. v. Vaval, 404 F.3d 144, 152 (2d Cir. 2005). They are construed "strictly against the government" and courts should "not 'hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness.'" Id. (quoting United States v. Lawlor, 168 F.3d 633, 637 (2d Cir. 1999)). "'To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement.'" Id. (quoting Lawlor, 168 F.3d at 636). Prosecutors must meticulously perform their obligations under plea or cooperation agreements, since such agreements "require defendants to waive fundamental constitutional rights." Id. at 152-53.

Once it has been determined that a plea or cooperation agreement has been breached, the remedy is generally "'either to permit the plea to be withdrawn or to order specific performance of the agreement.'" Id. at 154 (quoting United States v. Brody, 808 F.2d 944, 947 (2d Cir. 1986)). The choice of remedies is "generally 'a discretionary one guided by the circumstances of each case.'" U.S. v. Palladino, 347 F.3d 29, 34 (2d Cir. 2003) (quoting Palermo v. Warden, Green Haven State Prison, 545 F.2d 286, 297 (2d Cir.1976) (citing Santobello v. New York, 404 U.S. 257, 263, 92 S. Ct. 495, 30 L. Ed.2d 427 (1971)); U.S. v. Brody, 808 F.2d 944, 948 (2d Cir. 1986) ("The nature of the remedy varies with the nature of the broken promise and the facts of each particular case.").

The Cooperation Agreement executed by Ramsey and the government required that, should the defendant truthfully cooperate, the government would determine if such truthful cooperation constituted substantial assistance. If the government determined that Ramsey provided substantial assistance, then "it may, in its sole discretion, recommend a downward departure under either or both of 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1."

(Docket No. 245 Ex. at ¶ 4(f) (emphasis added).)  This language makes clear that, even if the defendant provided substantial assistance, the government was not required to (1) recommend a downward departure of any kind; or (2) recommend a downward departure under both § 5K1.1 and § 3553(e).  Additionally, every time a motion for downward departure was mentioned in the agreement, disjunctive connectives were used (i.e., "either or both," "and/or"), further indicating the parties' intent that the government was not bound by this language to make both types of motions.[2]  See id. ¶¶ 4(f), 4(g), 4(h)(ii), 5(c)(iii).  The parties could not reasonably have understood the terminology "either or both" and "and/or" to mean "both."  See Vaval, 404 F.3d at 152.  Thus, the government did not breach this portion of the Cooperation Agreement.

Ramsey argues that failure to make a § 3553(e) motion was a breach of the government's obligation to exercise discretion in making downward departure motions in good faith.

A prosecutor does not enjoy unfettered discretion in determining how to fulfill its obligations under plea and cooperation agreements.  U.S. v. Rexach, 896 F.2d 710, 714 (2d Cir. 1990).  Despite the discretion allowed the prosecutor in making such decisions, and the deference shown on review of those decisions, the prosecutor must still meet the obligation of good faith and fair dealing that is implicit in every contract.  Id.  Thus, a prosecutor's discretionary choices "cannot be made invidiously or in bad faith," by, for example, basing

---

[2] Given the high frequency with which plea and cooperation agreements are used to resolve federal criminal prosecutions, as well as the significant impact that statutory mandatory minimum sentencing provisions have upon defendants, all defense counsel should be wary of the use of the disjunctive when the government agrees to move for downward departures.

decisions on "'impermissible considerations [such] as race, religion or the desire to prevent [the defendant's] exercise of constitutional rights.'" Id.

Here the government determined that Ramsey did provide substantial assistance. Accordingly, it moved for a downward departure of five levels, bringing defendant's Sentencing Guidelines range from 210-262 months down to 121-151 months. This range was above the mandatory minimum of 120 months. It cannot be said that the government's decision to move solely pursuant to § 5K1.1 and not pursuant to § 3553(e) was not made in good faith.

The defendant argues that in not making a motion under § 3553(e), the government breached the provision of the Cooperation Agreement that "the final decision as to how much, if any, reduction in sentence is warranted . . . rests solely with the sentencing court." (Docket No. 245 Ex. ¶ 4(h)(i).) This language directs that the Court (and not the government) makes the final determination of what defendant's sentence will be. Notably, the Cooperation Agreement, unlike the Plea Agreement, does not provide that the Court's discretion in sentencing is subject to the statutory "mandatory minimum penalties." (Compare Docket No. 229 ¶ 4 with Docket No. 245 Ex. ¶ 7.)

The government determined that in its judgment Ramsey's substantial assistance warranted a five-level downward departure. It moved for such a departure. According to the Cooperation Agreement, once the government makes its recommendation of the value of defendant's substantial assistance, the decision-making authority shifts to the Court. The Court reviews the substance of the defendant's assistance, as well as the government's recommendation, to decide for itself how much of a sentence reduction is warranted. Of course, that determination must be within the parameters set by statute, the advisory United

States Sentencing Guidelines, and case law.  The final sentencing determination must be "sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a)(2).  18 U.S.C. § 3553(a).

A review of the applicable legal parameters reveals that the Court is required to sentence Ramsey to at least 120 months imprisonment, the statutory mandatory minimum. Without a § 3553(e) motion, the Court is restricted to imposing a sentence of no less than 120 months.  Taking into consideration the government's motion, the lower end of the applicable Sentencing Guidelines range will be 121 months, and, in fact, the government stated that it has no objection to a sentence of 121 months.  Even if the Court were to determine that defendant's substantial assistance, including information leading to multiple guilty pleas and two-day testimony resulting in three guilty verdicts (and eventual 240-month sentences), was more valuable than the government judged it to be, the Court could only sentence Ramsey to one month less than the government's recommendation.  In comparison to sentencing ranges of 210 to 262 months and 121 to 151 months, and a 120-month mandatory minimum, allowing the Court the discretion to vary only one month from the government's recommendation cannot constitute a final determination of how much reduction is warranted by defendant's substantial assistance.  Rather, the government has, in essence, made the determination of what sentence is reasonable based upon the nature and extent of Ramsey's substantial assistance.  By not making a motion under § 3553(e), the government has reserved for itself "the final decision as to how much, if any, reduction in sentence is warranted" by defendant's substantial assistance. (See Docket No. 245 Ex. ¶ 4(h)(i).)  The Cooperation Agreement requires that the final determination of how much of a reduction is

warranted will be made by the Court.  Accordingly, the government has breached this provision of the Cooperation Agreement.

The appropriate remedy is specific performance.  U.S. v. Harris, 188 F. Supp. 2d 294, 306 (W.D.N.Y. 2001) (finding that the government breached the plea agreement warranting the relief of specific performance of the obligation to file a downward departure motion); U.S. v. Vergara, 62 F. Supp. 2d 1108, 1116 (S.D.N.Y. 1999) (granting motion to compel government to make downward motion in accordance with plea and cooperation agreement); U.S. v. Zarbano, No. 5S 88 CR. 919, 1992 WL 395595, at *5 (S.D.N.Y. Dec. 15, 1992) (citing United States Rivera, 954 F.2d 122, 124 (2d Cir. 1992) (noting that the proper remedy where the government breaches a cooperation agreement is specific performance)); see also U.S. v. Brechner, 99 F.3d 96, 99 (2d Cir. 1996) (reversing a grant of "specific performance of a downward departure for substantial assistance" where district court erroneously found the government refused to move for a downward departure in bad faith); Rexach, 896 F.2d at 715-16 (Pierce, J., dissenting) (disagreeing with the majority's finding that prosecutor's determination that defendant failed to provide substantial assistance was made in good faith; dissenter would have remanded for a determination of the intention of the parties with regard to the plea agreement term in issue, and, if a certain determination was made on remand, would direct "the district court to grant [defendant's] motion for specific performance" of the government's promise to make a downward departure motion).

Even according to the government, the defendant has met his obligations under the Cooperation Agreement, entitling him to specific performance.  The provision of the agreement which was breached and which requires specific performance is that the final determination of the value of Ramsey's substantial assistance rests with the sentencing

court.  The only manner in which this can be accomplished is to deem the government to have made a motion for a downward departure pursuant to §3553(e).  See Harris, 188 F. Supp. 2d at 306-07 (granting defendant's motion to compel specific performance and deeming "the Government to have made the requisite departure motion"); Vergara, 62 F. Supp. 2d at 1116 ("I will not require the government to go through the formality of making the motion which I have concluded it is obligated to make.  That motion is deemed made, and I will sentence Vergara accordingly."); see U.S. v. De la Fuente, 8 F.3d 1333, 1341 (9th Cir. 1993) (finding that where government breached plea agreement by not making a substantial assistance motion, "the district court may remedy the breach . . . by sentencing the defendant below the statutory minimum"); see also U.S. v. Johnson, 241 F.3d 1049, 1055 (8th Cir. 2001) (vacating a sentence where the government breached the plea agreement by failing to make downward departure motion and directing the government, on remand, to file the motion required by the plea agreement).

## IV.  CONCLUSION

The government did not breach the provision of the Cooperation Agreement that stated that if it determined that defendant provided substantial assistance, it would make a downward departure motion pursuant to either or both of 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.  Additionally, defendant has not demonstrated that the government acted in bad faith in its determination to move for a downward departure solely pursuant to U.S.S.G. § 5K1.1.  However, the government did breach the Cooperation Agreement provision that reserved to the Court the final judgment as to the value of Ramsey's substantial assistance.

Accordingly, it is

ORDERED that

1.  Defendant's motion to compel specific performance of the Cooperation Agreement is GRANTED; and

2.  The government is deemed to have filed a motion for a downward departure pursuant to 18 U.S.C. § 3553(e).                    .

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 4, 2007
          Utica, New York.